UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **BENJAMIN F. KNAPP,** )<br>)<br>**Plaintiff,** )<br>**v.** )<br>) Case No. 09-2261<br>**ZACHRY HOLDING COMPANY, INC.,** )<br>f/k/a Zachry Construction Company, Inc., )<br>)<br>**Defendant.** ) | |

# REPORT AND RECOMMENDATION

In October 2009, Plaintiff Benjamin F. Knapp filed a Complaint (#1) against Defendant Zachry Holding Co., Inc., alleging violations of the Age Discrimination in Employment Act (29 U.S.C. § 626(c)). This Court has jurisdiction pursuant to 28 U.S.C. 1331, because Plaintiff's claim is based on a federal statute.

In January 2010, Defendant filed a Motion for Order Compelling Arbitration and Dismissing, or in the Alternative Staying, Proceedings (#6). Plaintiff subsequently filed a memorandum (#15) in opposition to this motion. After reviewing the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant's Motion for Order Compelling Arbitration and Dismissing, or in the Alternative Staying, Proceedings **(#6)** be **GRANTED.**

### I.  Background

The following information is taken from the complaint. Plaintiff worked for Defendant between June 20, 2005, and March 10, 2008, as a duct installer at Defendant's project with the Archer Daniel Midland Company in Decatur, Illinois. On June 20, 2005, Plaintiff signed an agreement to accept Defendant's Dispute Resolution Process (hereinafter "DRP") (#7-1). Plaintiff was 57 years old when he began his employment with Defendant and signed the agreement.

Plaintiff alleges that he performed his job in a fully satisfactory fashion and in accordance with Defendant's realistic expectations. He alleges he worked in a unit with two other individuals who did similar work to him, and that these individuals were in their early 30's–and therefore younger than him–and had worked for Defendant for a shorter period of time than he did. Plaintiff further alleges that shortly before he was terminated, Defendant hired another employee, who was also in his early 30's, to perform the same work.

Defendant terminated Plaintiff's employment on March 10, 2008. Plaintiff alleges he was told that this was due to a lack of work, but that the volume of work had stayed relatively consistent, and that at the time of his termination there was as much work as there had been earlier. As a result, Plaintiff claims that he was treated differently and less favorably by Defendant because of his age, and that Defendant violated the Age Discrimination in Employment Act (hereinafter "ADEA") by doing so.

## II.  Legal Standard

The Federal Arbitration Act (9 U.S.C. §§ 1-15) ("hereinafter FAA") mandates enforcing arbitration agreements if such agreements are (1) written, (2) part of a contract or transaction involving interstate commerce, and (3) valid under general principles of contract law. 9 U.S.C. § 2. The FAA embodies a federal policy of favoring arbitration, with any doubts with respect to arbitrability resolved in favor of arbitration. *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005). However, a party cannot be compelled to arbitrate if that party did not originally agree to submit the dispute to arbitration. *Id.*; *see also Grundstad v. Ritt*, 106 F.3d 201, 204 (7th Cir. 1997).

Whether two parties have agreed to arbitrate a dispute is an issue for the courts to decide. *AT&T Techs., Inc. v. Communc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Arbitration agreements are treated the same as any other contract. *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999). Federal courts look to state law when determining whether an enforceable arbitration agreement has been formed. *Id.*

To compel arbitration, a party must show that (1) there is an enforceable arbitration agreement; (2) the dispute is within the scope of the agreement; and (3) the opposing party has refused to proceed to arbitration. *See Zurich Am. Ins. Co. v. Watts In., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). The party opposing arbitration bears the burden of establishing that the arbitration clause should not be enforced. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987).

### III. Discussion

Defendant argues that Plaintiff has a legally enforceable contractual obligation to submit his age discrimination claim through the DRP instead of litigating it in a court of law. Specifically, Defendant contends that (1) there is an enforceable agreement to follow the DRP; (2) Plaintiff's claim is within the scope of the agreement; and (3) Defendant has not waived its right to enforce the arbitration provision of the DRP. Accordingly, Defendant contends that the Court should compel Plaintiff to arbitrate the claim.

The agreement that Plaintiff signed is a one-page document titled "Dispute Resolution." (#7-1, p. 1.) This agreement refers to the DRP, described in a separate lengthy document. (#7-2.) The process culminates in exclusive, binding arbitration. (#7-2, p. 12.)

#### A. Enforceability

Defendant first argues that Plaintiff is subject to an enforceable arbitration agreement.

Plaintiff responds that an enforceable agreement was never formed, because he had no choice but to sign the agreement if he wanted to be employed by Defendant. In addition, Plaintiff contends that he did not knowingly enter into an arbitration agreement because Defendant did not point out the arbitration clause of the DRP when Plaintiff signed the dispute resolution agreement.

Plaintiff urges the Court to follow the reasoning in *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir. 1994), in which the Ninth Circuit court reversed a district court order compelling arbitration in a sexual discrimination claim because the employee had not knowingly entered into an agreement to arbitrate employment disputes. In that case, the circuit court stated that, even assuming that the employees were aware of the nature of the form they signed, "they could not have understood that in signing it, they were agreeing to arbitrate sexual discrimination suits," because the form "did not purport to describe the types of disputes that were to be subject to arbitration." *Id.* at 1305.

Under Illinois law, creation of an arbitration agreement requires an offer, acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.,* 847 N.E.2d 99, 109 (Ill. 2006). In *Melena*, the court found that an offer occurred when the employer mailed a copy of the dispute resolution process to the employee. *Id.* The employee continued employment with the employer after this, and the court found that this constituted an acceptance of the offer as well as adequate consideration. *Id.* In addition, the court found that the agreement at issue did not constitute a contract of adhesion. *Id.* (stating that inequality in bargaining power "is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context") (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 24, 33 (1991)).

The facts in this case are similar to the facts in *Melena*. Defendant made an offer to Plaintiff when it gave Plaintiff a copy of the dispute resolution agreement. The agreement stated, in pertinent part, as follows:

> [Zachry has adopted] the DRP . . . as the exclusive means of resolving workplace disputes including your legally protected rights . . . an employee who accepts or continues employment . . . agrees to resolve all disputes and legal claims . . . through this process. . . . I understand that the . . . DRP provides, as its last step, that any claims I might have against [Zachry] related to my employment, including termination, be submitted to binding arbitration instead of to the court system.

(#7-1, p. 1.) Plaintiff accepted the offer when he signed the agreement and his continued employment with Defendant constituted adequate consideration.

Unlike the fact situation in *Prudential*, the agreement Plaintiff signed was clearly about the DRP. It referred to arbitration of an employee's legally protected rights and stated that any claims would be subject to binding arbitration instead of to the court system. Thus, the parties agreed to follow the DRP. The fact that Plaintiff had little choice but to accept the dispute resolution agreement and agree to resolve "all disputes and legal claims" through the DRP as a condition of employment does not undermine the enforceability of the agreement. *See Melena*, 847 N.E.2d at 109. Based on the plain language in the agreement, the Court finds Plaintiffs' arguments unpersuasive. "[I]t is a fundamental principal of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them." *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 781 n.8 (7th Cir. 2002) (quoting *Paper Express, Ltd. v. Pfankuch Maschinen,* 972 F.2d 753, 757 (7th Cir. 1992)). Thus, the Court concludes that the parties had an enforceable arbitration agreement.

### B. Scope of the Arbitration Provisions

Defendant next argues that Plaintiff's statutory claim of age discrimination is within the scope of the arbitration provisions of the DRP, because the DRP covers claims resulting from termination of employment.

Plaintiff responds that his right to sue under the ADEA is superior to provisions of the DRP; therefore, his claim is outside the scope of it.

The United States Supreme Court has held that statutorily-protected age-discrimination claims that are justiciable under the ADEA may fall within the scope of the arbitration provisions of an agreement. *14 Penn Plaza LLC v. Pyett*, --- U.S. ---, 129 S.Ct. 1456, 1465 (2009). For a plaintiff's claim to be within the scope of the arbitration provisions of an agreement, the agreement must "explicitly state" that the employee agrees to arbitrate statutory antidiscrimination claims. *Id.* Similarly, an individual does not waive the right to bring a discrimination claim in federal court unless the agreement explicitly states such a waiver. *Id.* "[T]he waiver must be clear and unmistakable" because "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit . . . waiver." *Wright v.*

*Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998) (stating that the "explicitly stated" standard applies to a waiver of an employee's statutory right to a judicial forum for employment discrimination claims). Thus, in *Pyett,* the Court stated that, "'having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Pyett*, 129 S.Ct. at 1465 (quoting *Gilmer*, 500 U.S. at 26)). The Court also acknowledged that "nothing in the text of the ADEA or its legislative history explicitly precludes arbitration." *Id.*

*Pyett* involved a collective bargaining agreement (hereinafter "CBA") that stated, in pertinent part, as follows:

> There shall be no discrimination against any present or future employee by reason of . . . age . . . including, but not limited to, claims made pursuant to . . . the Age Discrimination in Employment Act . . . or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

*Id.* at 1461. The Supreme Court held that this section of the CBA explicitly stated that a claim regarding a statutorily-protected right must be arbitrated and also explicitly stated that the employee had waived his statutorily-protected right to litigate, because it "clearly and unmistakably requires respondents to arbitrate the . . . claims at issue." *Id.* at 1466. Thus, the Court held that the plaintiff's claim was within the scope of the arbitration agreement and he had waived his right to file suit. *Id.* In addition, the Court stated that there is no distinction between arbitration agreements signed by an individual employee and a union on behalf of an employee. *Id.* at 1465.

*Wright* is an example of a case in which the Supreme Court held that an agreement did not explicitly state that statutorily-protected rights were within the scope of the agreement. The agreement in *Wright* stated, in pertinent part, as follows:

6

> [T]his Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment . . . . Any dispute concerning or arising out of the terms and/or conditions of this Agreement, or dispute involving the interpretation or application of this Agreement, or dispute arising out of any rule adopted for its implementation, shall be referred to the Seniority Board.

*Wright*, 525 U.S. at 73.  The Supreme Court found that (1) this language in the CBA was "very general"; and (2) the remainder of the CBA contained "no explicit incorporation of statutory antidiscrimination requirements." *Id.* at 80.  As a result, the Court held that the plaintiff's discrimination claim was not within the scope of the arbitration agreement nor had the plaintiff waived the right to litigate his claim.

In this case, the text of the DRP states that the "DR Process is the exclusive means of resolving workplace disputes, including legally protected rights." (#7-2, pp. 2, 5.)  It continues that the "DR Process provides protection of your legal rights – such as . . . the protection of all other rights covered by federal or state law." (#7-2, p. 6.)  In addition, Plaintiff signed the dispute resolution agreement that stated he agreed "to resolve all disputes and legal claims against ZCC through this [dispute resolution] process" (#7-1, p. 1), and also stated that "I understand that the ZCC DRP provides . . . that any claims I might have against ZCC related to my employment, including termination, be submitted to binding arbitration instead of to the court system." (#7-1, p. 1.)

After reviewing the relevant case law, the Court concludes that the arbitration provisions of the DRP satisfies the *Pyett* standard.  While the DRP does not list every federal statute that could give rise to a claim, it clearly states that claims related to protections of legal rights under federal law are covered under the DRP.  *See, e.g., Manuele v. Springfield*, No. 08-3026, 2010 WL 2348608, at *7 (C.D. Ill. 2010) (unreported) (indicating that an arbitration agreement should mention either specific statutes that it covers or federal law generally).  The DRP itself explicitly states that a claim regarding statutorily-protected rights must be arbitrated.  Accordingly, the Court concludes that Plaintiff's ADEA claim is within the scope of the dispute resolution agreement and the arbitration provisions of the DRP.

Plaintiff also explicitly waived his right to litigate his claim. The dispute resolution agreement states: "I understand that the . . . DRP provides, as its last step, that any claims I might have against [Zachry] related to my employment, including termination, be submitted to binding arbitration *instead of to the court system*."  (#7-1, p. 1 (emphasis added).)  The DRP states as follows: "This agreement includes the requirement than any legal dispute not resolved through Internal Review (Steps 1-3) or Mediation will be submitted to final and binding arbitration *rather than through the courts or to a jury*."  (#7-2, p. 14 (emphasis added).)  Because this waiver is explicit, consistent with the requirements articulated in *Pyett*, the Court recommends dismissing Plaintiff's suit rather than staying it.

### C.  Waiver

Defendant also argues that it has not waived its right to enforce the arbitration provision of the agreement.  Plaintiff does not dispute this.
.

### IV.  Summary

For the reasons stated above, the Court recommends that Defendant's Motion for Order Compelling Arbitration and Dismissing, or in the Alternative Staying, Proceedings **(#6)** be **GRANTED** and that this case be dismissed.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of the Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video View, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 10th day of August, 2010.

s/ DAVID G. BERNTHAL<br>
U.S. MAGISTRATE JUDGE